IMPERIAL CHEMICAL MANUF'G CO. v. STEIN et al.

(Circuit Court of Appeals, Second Circuit.   December 8, 1896.)

INFRINGEMENT OF PATENTS—RIGHT TO ACCOUNTING—LACHES.
    The mere fact that, for several years, sales of an infringing hair dye were made by a dealer in New York City, where the patent owner resided, without protest, *held* not to constitute laches preventing an accounting, where there was nothing to show actual knowledge of such sales, and where the advertisements, labels, etc., did not disclose the nature or ingredients of the dye. 69 Fed. 616, reversed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by the Imperial Chemical Manufacturing Company against Joachim Stein and others for alleged infringement of letters patent No. 305,057, for a process and compound for dyeing hair.   The circuit court sustained the patent, found infringement, and granted an injunction, but refused an accounting on the ground of laches in bringing the suit.   69 Fed. 616.   Complainants appeal from the part of the decree refusing an accounting.

Arthur v. Briesen, for appellant.

Hayes & Greenbaum (Samuel Greenbaum, of counsel), for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM.   The circuit court decreed for the complainant, adjudging the validity of the patent in suit, and that it had been infringed by the defendants; but, while granting a perpetual injunction against the defendants, the court refused the complainant an accounting for damages or profits, upon the theory that there had been such laches on the part of the owner of the patent in asserting the rights secured thereby as to preclude such relief.   From that part of the decree denying the accounting, the complainant has appealed; and the question now involved is whether such laches on the part of the owner of the patent were shown as to make it inequitable to require the defendants to respond for their past acts of infringement.

The patent was for a process of dyeing hair and the chemical preparations constituting the dye bath.   It was granted September 16, 1884.   Immediately upon the issue of the patent, the title became vested in Maria Louisa Kellogg.   She continued to be the owner until March, 1890, when she sold and transferred the patent to the complainant.   That corporation commenced the present suit in June, 1891.   By their answer to the bill of complaint, the defendants, besides alleging the invalidity of the patent, because of want of novelty, denied infringement, and specifically asserted that the preparation made and sold by them had been manufactured and sold for many years previously by one Shaw, their assignor and predecessor in business, and that as made and sold by Shaw and by themselves it was composed of different ingredients, and effected a

different result, from the patented invention. The laches imputed to the complainant arise solely from the manufacture and sale by Shaw during the period when the title of the patent was in Maria Louisa Kellogg of the preparation thus alleged in the answer to have been unlike that of the patent. The learned judge of the circuit court was of the opinion that because, for several years prior to the bringing of the suit, Shaw "advertised and sold said infringing dye in the same form, and under the same name, as that now used by the defendants, and no claim of infringement was ever made until after the defendants had bought out said business," the delay in seeking relief should preclude the complainant from the right to an account for past profits; but because there was "no evidence of nonuser, surrender to the public, or knowledge of infringement, except such as may be inferred from the fact of said sales, without any protest on the part of complainant's assignor, the principle of laches should not be so applied as to deprive the complainant of the right to an injunction."

The proofs show that Shaw was a dealer, at New York City, in human hair, cosmetics, hair dyes, etc., selling many different kinds of hair dyes. During 1876, he sold, among other hair dyes, small quantities of one called "Auburnine." From 1876 to about 1885, although the dye was occasionally used in Shaw's business, it was not sold. In 1885 the sale was resumed, the dye being then labeled "Improved Auburnine," and was continued (in what quantities does not appear) until the spring of 1891. At that time the defendants purchased the general business and stock in trade of Shaw, including an inconsiderable quantity of Improved Auburnine then on hand. Marshall, who made the Auburnine and Improved Auburnine, testified that both were the same preparation, and were sold in the same form, except the former was put up two bottles in a box, and the latter three bottles in a box, the extra bottle of the latter containing an additional ingredient. The circulars in which the preparation was inclosed when put up did not disclose or suggest in any way the ingredients of which it was composed. During the period of the sales, there were numerous hair dyes in the market composed of chemical ingredients quite similar to Shaw's and to that of the patent. It may be presumed that, during the period of those sales, complainant's assignor resided in the city of New York, because the recital in the instrument transferring to her the title to the patent is that at its date she was a resident of that city; and, in the absence of any testimony to the contrary, the legal inference is that she has since continued to reside there. Aside from this, there is no evidence in the record as to the situation or circumstances of the complainant's assignor.

We think the learned judge was in error in adopting the view that the mere fact of the infringement of the patent by Shaw, without protest on the part of the complainant's assignor, constituted such laches as should defeat a recovery against the present defendants for damages or profits. The theory that she was aware of the sales by Shaw is purely conjectural. In a large city like New York there are a great number of dealers in hair dyes; and unless she

was engaged in the business herself, or was actively asserting her rights under her patent, it might well happen that a particular hair dye might be sold for years without attracting her attention. If, however, it could be legitimately assumed that she was aware of the sales, the circumstances repel any presumption that she was aware that the preparation was an infringement of her patent. Its formula was not advertised in any way. It was not sold by a name which conveyed any information as to its ingredients. In general characteristics, it assimilated to many other hair dyes which were not infringements; and, in the answer in the cause, the present defendants assert that it was not the hair dye of the patent. Unless it was her duty to cause a chemical analysis to be made from time to time of various hair dyes being sold in New York City to ascertain if any person was infringing her patent, there is no reason for imputing knowledge to her of the infringement, upon the theory that she did not avail herself of the opportunity of acquiring knowledge. We cannot conceive that such a duty was incumbent upon her.

We do not deem it necessary to discuss the scope and application of the doctrine of laches as it obtains in courts of equity. It is not pretended that Shaw supposed the complainant's assignor to be aware that her patent was being infringed, or was influenced in the slightest degree by any implied acquiescence on her part. Much less can it be pretended that the present defendants have in any way been influenced by such a belief. Their answer is inconsistent with such a theory. There is not an element of equitable estoppel in the case as disclosed by the proofs.

The decree is reversed as to the part appealed from, with costs, with instructions to the circuit court to decree for an accounting, together with the costs of the suit.